Joshua B. Swigart (SBN 225557)
*josh@swigartlawgroup.com*
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio S., Suite 308
San Diego, CA 92108
Tel: (866) 219-3343; Fax: (866) 219-8344

Daniel G. Shay (SBN 250548)
Dan@ShayLegal.com
Harrison J. Lynch (SBN 355139)
Harrison@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

Attorneys for Plaintiff J.S.
and the putative class

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.S., an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>INTEGRATED ONCOLOGY NETWORK, LLC; and RADIATION ONCOLOGY NETWORK OF SOUTHERN CALIFORNIA, LLC<br>Defendants. | Case No.: '25CV1772 JLS DDL:<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff J.S. ("Plaintiff"), by and through his attorneys, brings this class action on behalf of himself, and the Class, as defined below, against Defendants INTEGRATED ONCOLOGY NETWORK, LLC; and RADIATION ONCOLOGY NETWORK OF SOUTHERN CALIFORNIA, LLC (collectively "Defendants"). Plaintiff hereby alleges, on information and belief, except for information based on

personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## INTRODUCTION

1. Plaintiff brings this Class Action because of Defendants' failure to properly secure and safeguard Plaintiff's and other similarly situated current and former patients' or customers' personal information ("PI") and private health information ("PHI") (collectively "Personally Identifiable Information" or "PII").

2. Defendants operate many cancer treatment centers in California, with many California employees. Defendant Integrated Oncology Network, LLC operates many more cancer treatment centers across the United States.

3. Plaintiff and all other persons similarly situated had a right to keep their PII provided to Defendants confidential (the PII provided to Defendants is collectively referred to as "Sensitive Information"). Plaintiff and other members of the Class relied on Defendants to keep their Sensitive Information confidential as required by the applicable laws.

4. Defendants violated this right. They failed to implement or follow reasonable data security procedures as required by law and failed to protect Plaintiff and the proposed Class members' Sensitive Information from unauthorized access.

5. As a result of Defendants' inadequate data security and inadequate or negligent training of their employees, Plaintiff's and other proposed Class members' Sensitive Information, including their names, diagnosis/clinical information, doctor name, medical procedure information, medical record number (MRN), and treatment information was accessed by unauthorized third parties on Defendants' systems.

6. The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect their patients/customers' Sensitive Information.

7. Defendants disregarded the rights of Plaintiff and Class members by, among other things, recklessly or negligently failing to take adequate and reasonable

measures to ensure their data systems was protected against unauthorized intrusions; failing to disclose that they did not have reasonable or adequately robust computer systems and security practices to safeguard their patients/customers' Sensitive Information; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; and failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

8. As a result of Defendants' failure to implement and follow reasonable security procedures, Class members' Sensitive Information is now exposed. Plaintiff and Class members have spent, and will continue to spend, significant amounts of time and money trying to protect themselves from the adverse ramifications of the Data Breach and dealing with actual fraud and will forever be at a heightened risk of identity theft and fraud.

9. Plaintiff, on behalf of himself and all others similarly situated, alleges claims for (1) negligence; (2) invasion of privacy; (3) breach of implied contract; (4) breach of fiduciary duty; (5) breach of confidence; (6) violation of the California Confidential Medical Information Act (Ca. Civ. Code § 56, *et seq.*); (7) violation of the California Unfair Competition Law (Cal. Business & Professions Code § 17200, *et seq*.); and, (8) violations of the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150, *et seq.*). Plaintiff and the Class members seek damages, including but not limited to nominal damages from Defendants, and to compel Defendants to adopt reasonably sufficient security practices to safeguard their patients/customers' Sensitive Information that remains in Defendants' custody to prevent incidents like the Data Breach from reoccurring in the future.

## JURISDICTION AND VENUE

10. Jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than one Defendant, Integrated Oncology Network, LLC, who is a

Delaware limited liability company, thus satisfying minimal jurisdiction. There will be more than 100 members in the class, and the aggregated damages exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

11. Plaintiff is a citizen of California because his domicile is in California.

12. This Court has personal jurisdiction over Defendant Integrated Oncology Network, LLC ("ION") because ION has conducted and continues to conduct substantial business in California, employs numerous individuals in California, and has intentionally availed itself of the laws and markets of California through the operation of their business in California.

13. This Court has personal jurisdiction over Defendant Radiation Oncology Network of Southern California, LLC ("RONSC") because RONSC has its principal place of business in California, has conducted and continues to conduct substantial business in California, employs numerous individuals in California, and has intentionally availed itself of the laws and markets of California through the operation of their business in California.

14. Venue is proper in this Court because Defendants' jointly operate the cancer treatment center where Plaintiff's treatment occurred in this county and a substantial portion of the acts giving rise to this action occurred in this county.

## PARTIES

### A. PLAINTIFF

15. Plaintiff is an individual over the age of eighteen years, and at all times relevant herein was and is, a resident of the County of San Diego in the State of California.

16. Plaintiff was treated by Defendants in California. Plaintiff's Sensitive Information, including his name, diagnosis/clinical information, doctor name, medical procedure information, medical record number (MRN), and treatment information was accessed by unauthorized third parties on Defendants' systems.

**B. DEFENDANTS**

17. ION is incorporated in Delaware and has its principal place of business in Nashville, Tennessee.

18. Defendant ION operates many locations across the United States. Defendants are a provider of cancer medical treatment, which employs numerous individuals in California.

19. Defendant RONSC is incorporated in California and has its principal place of business in El Centro, California.

## FACTUAL ALLEGATIONS

**A. Background**

20. Defendants are a provider of cancer medical treatment, and in the course of their business, they have a significant number of patients and customers.

21. A common practice for treatment facilities, Defendants must keep their patients/customers' Sensitive Information in their system. Defendants accomplish this by keeping the Sensitive Information electronically—even in their email systems.

22. As treatement facilities, Defendants are required to ensure that such sensitive, personal information is not disclosed or disseminated to unauthorized third parties without patients/customers' express, written consent, as further detailed below.

**B. The Data Breach**

23. Upon information and belief, Defendants' current and former patients/customers' Sensitive Information was accessed by unauthorized third parties on Defendants' systems. Defendants did not immediately notify the patients/customers nor the California Attorney General of such breach. It is unknown the extent of how much information was accessed, or where it has gone.

24. Defendants failed to put in place proper security protocols to protect against the unauthorized release of patient information and failed to properly train their employees on such protocols, resulting in the unauthorized release of private data. As a result of Defendants' failures, Plaintiff and the Class members' Sensitive Information

was accessed and viewed by unknown and unauthorized third parties. This means that the Data Breach was successful: unauthorized individuals accessed Plaintiff's and the Class members' unencrypted, unredacted information set forth above.

25. Plaintiff learned that his Sensitive Information, including his name, diagnosis/clinical information, doctor name, medical procedure information, medical record number (MRN), and treatment information when Defendant RONSC sent him a Notice of Data Breach, dated June 27, 2025.

26. This kind of Sensitive Information is highly valued by criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.

**C. Plaintiff's Exposure**

27. Knowing that thieves stole his Sensative Information and knowing that his Sensative Information may now or in the future be available for unauthorized third parties to access and use has caused Plaintiff great anxiety. He is now very concerned about fraud and identity theft.

28. Plaintiff suffered actual injury from having his Sensative Information exposed as a result of the Data Breach including, but not limited to: (a) damages to and diminution in the value of his PII—a form of intangible property that Plaintiff entrusted to Defendant as a condition of being Defendant's patient/customer; (b) loss of his privacy; (c) imminent and impending injury arising from the increased risk of fraud and identity theft; and (d) the time and expense of mitigation efforts as a result of the Data Breach.

29. As a result of the Data Breach, Plaintiff will continue to be at heightened risk for financial fraud, and identity theft, and the attendant damages, for years to come.

**D. Defendant Knew or Should Have Known of the Risk Because Healthcare Companies are Particularly Susceptible to Cyber Attacks.**

30. Defendants also knew that any breach of its systems, and exposure of

information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Sensative Information was compromised, especially given that Data Breaches have, unfortunately, become pervasive.

31. The number of U.S. data breaches surpassed 3,000 in 2024—nearly tying the all-time high established in 2023.[1] That trend continues.

32. Defendant knew and understood that unprotected or exposed PII in the custody of Healthcare Companies, such as Defendant, is valuable and highly sought after by nefarious third parties seeking to illegally monetize that PII through unauthorized access. Indeed, when compromised, highly confidential related data is among the most sensitive and personally consequential. Data breaches and identity theft have a crippling effect on individuals and detrimentally impacts the economy as a whole.

33. As a healthcare company, Defendants knew, or should have known, the importance of safeguarding Sensative Information entrusted to it by Plaintiff, and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff as a result of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**E. Defendant Acquires, Collects, and Stores Plaintiff's PII.**

34. Defendant acquires, collects, and stores a massive amount of its patients/customers' protected confidential information and other personally or medically identifiable data.

35. As a condition of being Defendant's patient/customer, Defendant requires its customers to entrust them with highly confidential PII.

36. By requiring, obtaining, collecting, using, and deriving a benefit from Plaintiff's PII, Defendant assumed legal and equitable duties, and knew or should have known was responsible for protecting Plaintiff's PII from disclosure.

---

[1] Identity Theft Resource Center, *2024 Data Breach Report*, *available at:* https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last accessed May 13, 2025).

37. Plaintiff has taken reasonable steps to maintain the confidentiality of his PII. Plaintiff relied on Defendant to keep his PII confidential and securely maintained, to use this information for medical and business purposes only, to only allow authorized disclosures of this information, and prevent unauthorized disclosure of the information.

**F. The Value of PII and the Effects of Unauthorized Disclosure.**

38. Defendant was well aware of the highly private nature of the PII it collects and its significant value to those who would use it for wrongful purposes.

39. PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can commit an array of crimes including identify theft, medical fraud, and financial fraud.[2] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the dark web.

40. The ramifications of Defendant's failure to keep Plaintiff's PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

41. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences if its data security systems were breached, including the significant costs that would be imposed on its customers as a result of a breach.

**G. Defendant Failed to Comply with FTC Guidelines.**

42. The Federal Trade Commission ("FTC") promulgates numerous guides for businesses highlighting the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[3]

[2] Federal Trade Commission, *How to tell if someone is using your identity, available at:* https://consumer.ftc.gov/consumer-alerts/2022/02/how-tell-if-someone-using-your-identity (last accessed May 13, 2025).

[3] Federal Trade Commission, *Start With Security*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed May 13, 2025).

43. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[4] The guidelines note that businesses should protect the personal customer information they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct any security problems.

44. The FTC further recommends companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry–tested methods for security; monitor for suspicious activity on the network; and verify third–party service providers have implemented reasonable security measures.[5]

45. The FTC brings enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

46. Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

47. Defendant was at all times fully aware of its obligation to protect Plaintiff's PII because of Defendant's position as trusted and experienced employers. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[4] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed May 13, 2025).

[5] FTC, *Start With Security*, *supra.*

**H. Defendant Failed to Comply with Industry Standards.**

48. In failing to adequately secure Plaintiff's and Class Members' Sensitive Information, Defendants Breached duties they owed Plaintiff and Class members under statutory and common law. Under HIPAA, health insurance providers have an affirmative duty to keep patients' PI confidential. As a covered entity, Defendants' duty is statutory under HIPPA and other federal and state statutes to safeguard Representative Plaintiff's and Class Members' Private Information.

49. Because Defendants are covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A, C ("Security Standards for the Protection of Electronic Protected Health Information") ("Security Rule"), and E ("Privacy of Individually Identifiable Health Information").

50. HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

51. HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

52. HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302. "Electronic 'protected health information'" is "individually identifiable health information . . . that is (i) transmitted by electronic media; (ii) maintained in electronic media." *See* 45 C.F.R. § 160.103.

53. HIPAA's Security Rule, at § 164.306 (a) (1-4), requires Defendants to do the following:

a. Ensure the confidentiality, integrity and availability of all electronic protected health information the covered entity or business associate

creates, receives, maintains or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

54. HIPAA also requires Defendants to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under § 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1). Moreover, the HIPAA Breach Notification Rule, § 45 C.F.R. §§ 164.400-414, requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 daus following the discovery of the breach." 45 C.F.R. §§ 164.404(b).

55. Defendant failed to implement several basic cybersecurity safeguards that can be implemented to improve cyber resilience and require a relatively small financial investment yet can have a major impact on an organization's cybersecurity posture including: (a) the proper encryption of PII; (b) educating and training employees on how to protect PII; and (c) correcting the configuration of software and network devices.

56. Despite the abundance and availability of information regarding the threats and cybersecurity best practices to defend against those threats, Defendant chose to ignore them. These best practices were known, or should have been known by Defendant, whose failure to heed and properly implement industry standards directly led to the Data Breach and the unlawful exposure of PII.

**I. Plaintiff Suffered Damages.**

57. The ramifications of Defendant's failure to keep Plaintiff's PII secure are long lasting and severe. Once that kind of PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.

58. The PII belonging to Plaintiff is private, sensitive in nature, and left inadequately protected by Defendant—who did not obtain Plaintiff's consent to disclose such PII to any other person as required by applicable law and industry standards.

59. The Data Breach was a direct and proximate result of Defendant's failure to: (a) properly safeguard and protect Plaintiff's PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's PII; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

60. Defendant had the resources necessary to prevent the Data Breach, but neglected to adequately implement data security measures, despite its obligation to protect member data.

61. Defendant could have prevented the intrusions into its systems and, ultimately, the theft of PII if Defendant had remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field.

62. As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff is now in imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring him to dedicate time and resources which she otherwise would have dedicated to other life demands, such as work and family, to mitigate the actual and potential impact of the Data Breach on his life.

63. The U.S. Department of Justice's Bureau of Justice Statistics found that

"among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems," and that "resolving the problems caused by identity theft may take more than a year for some victims."[6]

64. As a direct result of the Defendant's failures to prevent the Data Breach, Plaintiff has suffered, will suffer, and is at increased risk of suffering:

a. The compromise, publication, theft and/or unauthorized use of his PII;
b. Out–of–pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;
c. Lost opportunity costs and lost wages associated with efforts expended and loss of productivity from addressing and attempting to mitigate actual and future consequences of the Data Breach, including but not limited to researching how to prevent, detect, contest, and recover from identity theft and fraud;
d. The continued risk to his PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fail to undertake appropriate measures to protect the PII in its possession; and
e. Current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of Plaintiff's life.

65. In addition to a remedy for the economic harm, Plaintiff maintains an undeniable interest in ensuring his PII is secure, remains secure, and is not subject to further misappropriation and theft.

### J. Defendant's Delay in Identifying & Reporting the Breach Caused Additional Harm.

66. It is axiomatic that:

The quicker a financial institution, credit card issuer, wireless carrier or

---

[6] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013, *available at*: https://www.bjs.ojp.gov/content/pub/pdf/vit12.pdf (last accessed May 13, 2025).

other service provider is notified that fraud has occurred on an account, the sooner these organizations can act to limit the damage. Early notification can also help limit the liability of a victim in some cases, as well as allow more time for law enforcement to catch the fraudsters in the act.[7]

67. Indeed, once a data breach has occurred:

[o]ne thing that does matter is hearing about a data breach quickly. That alerts consumers to keep a tight watch on credit card bills, insurance invoices, and suspicious emails. It can prompt them to change passwords and freeze credit reports. And notifying officials can help them catch cybercriminals and warn other businesses of emerging dangers. If consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves (internal citations omitted).[8]

68. Although his PII was improperly exposed, Plaintiff has still not been notified by Defendant of the Data Breach, depriving Plaintiff of the ability to promptly mitigate potential adverse consequences resulting from the Data Breach.

69. As a result of Defendant's delay in detecting and notifying consumers of the Data Breach, there is an increased risk of fraud for Plaintiff.

## **CLASS ACTION ALLEGATIONS**

70. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class and Subclass:

All individuals whose Sensitive Information stored or possessed by Defendants that was subject to the Data Breach (the "Class").

---

[7] Javelin Strategy & Research, *Identity Fraud Hits Record High with 15.4 Million U.S. Victims in 2016, Up 16 Percent According to New Javelin Strategy & Research Study*, February 1, 2017, *available at:* https://javelinstrategy.com/press-release/identity-fraud-hits-record-high-154-million-us-victims-2016-16-percent-according-new (last accessed May 13, 2025).

[8] Consumer Reports, *The Data Breach Next Door: Security breaches don't just hit giants like Equifax and Marriott. Breaches at small companies put consumers at risk, too*, January 31, 2019, *available at:* https://www.consumerreports.org/data-theft/the-data-breach-next-door/ (last accessed May 13, 2025).

All California residents whose Sensitive Information stored or possessed by Defendant was subject to the Data Breach (the "California Subclass").

71. Excluded from the Class are Defendant, its officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which Defendant has a controlling interest, and any Judge assigned to this case and their immediate families.

72. Plaintiff reserves the right to amend or modify the definition of the Class and/or Subclass to provide greater specificity and/or further division into subclasses or limitation to particular issues.

73. **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are hundreds if not thousands of class members in the Class. The identities of the Class Members are ascertainable and can be determined based on records maintained by Defendant.

74. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only individual class members. The questions of fact and law that are common to the Class members and predominate over questions that may affect individual Class members, include:

a) Whether Plaintiff's and the Class members' Sensitive Information was accessed and/or viewed by one or more unauthorized persons in the Data Breach alleged above;

b) When and how Defendant should have learned and actually learned of the Data Breach;

c) Whether Defendant's response to the Data Breach was adequate;

d) Whether Defendant owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their Sensitive

Information;

e) Whether Defendant breached that duty;

f) Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class members' Sensitive Information;

g) Whether Defendant acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class members' Sensitive Information;

h) Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class members' Sensitive Information secure and prevent loss or misuse of that Sensitive Information;

i) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j) Whether Defendant caused Plaintiff and Class members damages;

k) Whether Defendant violated the law by failing to promptly notify Class members their Sensitive Information was compromised;

l) Whether Plaintiff and Class members are entitled to actual damages, nominal and/or statutory damages, credit monitoring, other monetary relief, and/or equitable relief;

m) Whether Defendant violated the California Confidential Medical Information Act (Cal. Civ. Code § 56 et seq.);

n) Whether Defendant violated the California Unfair Competition Law (Business & Professions Code § 17200, et seq.); and

o) Whether Defendant violated the HIPAA as described herein.

75. **<u>Typicality:</u>** Plaintiff's claims are typical of those of other Class members because all had their Sensitive Information compromised because of the Data Breach, due to Defendant's virtually identical conduct.

76. **Adequacy:** Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff is represented by experienced and competent Class Counsel. Class Counsel have litigated numerous class actions. Class counsel intend to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the members of the Class.

**Superiority: The class action is superior to other available methods for fairly and efficiently adjudicating this controversy because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There is no foreseeable difficulty in managing this action as a class action and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.**

## First Cause of Action

## Negligence

## [On Behalf of Plaintiff and the Class]

77. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

78. Defendants' own negligent conduct created a foreseeable risk of harm to Plaintiff and Class members. Defendants' negligence included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' negligence also included their decision not to comply with (1) industry standards, and/or best practices for the safekeeping and encrypted

authorized disclosure of the Sensitive Information of Plaintiff and Class members; (2) Section 5 of the FTC Act; or, (3) HIPAA.

79. Defendants had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining and testing their security protocols to ensure Sensitive Information in Defendants' possession was adequately secured and protected, and that employees tasked with maintaining such information were adequately trained on relevant cybersecurity measures. Defendants also had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiff's and Class members' Sensitive Information.

80. As a condition of being a patient/customer, Plaintiff and Class members were obligated to provide Defendants directly with their Sensitive Information. As such, Plaintiff and the Class members entrusted their Sensitive Information to Defendants with the understanding that Defendants would safeguard their information.

81. Defendants were in a position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach. However, Plaintiff and Class members had no ability to protect their Sensitive Information in Defendants' possession.

82. Defendants had full knowledge of the sensitivity of the Sensitive Information, and the types of harm Plaintiff and Class members could, would, and will suffer if the Sensitive Information were wrongfully disclosed.

83. Plaintiff and Class members were the foreseeable and probable victims of Defendants' negligent and inadequate security practices and procedures that led to the Data Breach. Defendants knew or should have known of the inherent risks in collecting and storing the highly valuable Sensitive Information of Plaintiff and Class members, the critical importance of providing adequate security of that Sensitive

Information, the current cyber security risks being perpetrated, and that Defendants had inadequate employee training, monitoring and education and IT security protocols in place to secure the Sensitive Information of Plaintiff and Class members.

84. Defendants negligently, through their actions and/or omissions, and unlawfully breached their duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' Sensitive Information while the data was within Defendants' possession and/or control by failing to comply with and/or deviating from standard industry rules, regulations, and practices at the time of the Data Breach.

85. The harm the Data Breach caused is the type of harm privacy laws were intended to guard against. And Plaintiff and Class members are within the class of persons privacy laws were intended to protect.

86. Defendants negligently failed to comply with privacy laws by failing to protect against and prevent the dissemination of Plaintiff's and Class members' Sensitive Information to unauthorized third parties.

87. Defendants' violations of Section 5 of the FTC Act also constitute negligence. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Sensitive Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

88. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class members' Sensitive Information and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Sensitive Information they required, obtained, and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class members.

89. Plaintiff and Class members are within the class of persons the FTC Act was intended to protect.

90. The harm the Data Breach caused, and continues to cause, is the type of harm the FTC Act and HIPAA was intended to guard against. The FTC pursues enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class members.

91. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of Plaintiff's and Class members' Sensitive Information.

92. Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately disclose to Plaintiff and Class members the existence and scope of the Data Breach.

93. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff's and Class members' Sensitive Information would not have been compromised.

94. There is a temporal and close causal connection between Defendants' failure to implement security measures to protect the Sensitive Information and the harm suffered, and/or risk of imminent harm suffered, by Plaintiff and Class members.

95. As a direct and proximate result of Defendants' negligence, Plaintiff and Class members have suffered, and continue to suffer, injuries and damages arising from the Data Breach, including, but not limited to: damages from lost time and efforts to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized

activity, filing police reports, and damages from identity theft, which may take months—if not years—to discover, detect, and remedy.

96. Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff and Class members have suffered, and will continue to suffer, the continued risks of exposure of their Sensitive Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession.

**Second Cause of Action**

**Invasion of Privacy**

**(On Behalf of Plaintiff and the Class)**

97. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

98. Plaintiff and Class members had a legitimate expectation of privacy with respect to their Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

99. Defendants owed a duty to their patients/customers, including Plaintiff and Class members, to keep their Sensitive Information confidential.

100. The unauthorized release of Sensitive Information, especially PHI, is highly offensive to a reasonable person.

101. The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class members disclosed their Sensitive Information to Defendants as part of being a patient/customer, but privately, with the intention that the Sensitive Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

102. The Data Breach constitutes an intentional interference with Plaintiff's and Class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

103. Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

104. Acting with knowledge, Defendants had notice and knew their inadequate cybersecurity practices would cause injury to Plaintiff and Class members.

105. As a proximate result of Defendants' acts and omissions, Plaintiff and Class members' Sensitive Information were disclosed to, and used by, third parties without authorization, causing Plaintiff and Class members to suffer damages.

106. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class members in that the Sensitive Information maintained by Defendants may be breached again, leading to further viewing, distributing, and use of updated and additional Sensitive Information by unauthorized persons.

107. Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class members.

## Third Cause of Action

**Breach of Implied Contract**

**(On Behalf of Plaintiff and the Class)**

108. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

109. Plaintiff and Class members were required to provide their Sensitive Information, including their names, addresses, social security numbers and various

other health or medical related information to Defendants as a condition of being a patient/customer.

110. Plaintiff and Class members paid money to Defendants in exchange for services, along with Defendants' promise to protect their Sensitive Information and other Sensitive Information from unauthorized disclosure.

111. In their written privacy policies, Defendants expressly promised Plaintiff and Class members that they would only disclose protected information and other Sensitive Information under certain circumstances, none of which relate to the Data Breach.

112. Defendants promised to comply with privacy standards, and to make sure Plaintiff's and Class members' Sensitive Information would remain protected.

113. Implicit in the agreement between Plaintiff and Class members on the one hand, and the Defendants on the other, regarding providing protected Sensitive Information, was Defendants' obligation to: (a) use such Sensitive Information for business or medical purposes only; (b) take reasonable steps to safeguard that Sensitive Information; (c) prevent unauthorized disclosures of the Sensitive Information; (d) provide Plaintiff and Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Sensitive Information; (e) reasonably safeguard and protect the Sensitive Information of Plaintiff and Class members from unauthorized disclosure or uses; and (f) retain the Sensitive Information only under conditions that kept such information secure and confidential.

114. Without such implied contracts, Plaintiff and Class members would not have provided their Sensitive Information to Defendants.

115. Plaintiff and Class members fully performed their obligations under the implied contract with Defendants. However, Defendants did not.

116. Defendants breached the implied contracts with Plaintiff and Class members by failing to:

a. Reasonably safeguard and protect Plaintiff's and Class members' Sensitive Information, which was compromised as a result of the Data Breach; and

b. Identify and respond to suspected or known security incidents.

117. As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiff and Class members have suffered, and continue to suffer, injuries and damages arising from the Data Breach including, but not limited to: damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months if not years to discover, detect, and remedy.

**Fourth Cause of Action**

**Breach of Fiduciary Duty**

**(On Behalf of Plaintiff and the Class)**

118. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

119. In light of their special relationship, Defendants became the guardian of Plaintiff's and Class members' Sensitive Information. Defendants became fiduciaries, created by their undertaking and guardianship of Plaintiff's and Class members' Sensitive Information, to act primarily for the benefit of Plaintiff and Class members. This duty included the obligation to safeguard Plaintiff's and Class members' Sensitive Information, and to timely notify them in the event of a data breach.

120. Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. Defendants breached their fiduciary duties owed to Plaintiff and Class members by failing to:

a. Properly encrypt and otherwise protect the integrity of the system containing Plaintiff's and Class members' protected confidential information and other Sensitive Information;

b. Timely notify and/or warn Plaintiff and Class members of the Data Breach; and

c. Otherwise failing to safeguard Plaintiff's and Class members' Sensitive Information.

121. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class members have suffered, and will suffer, injury, including but not limited to: (a) potential identity theft; (b) the loss of the opportunity to control how their Sensitive Information is used; (c) the compromise, publication, and/or theft of their Sensitive Information; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (e) lost opportunity costs associated with the effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their Sensitive Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect their patients/customer's Sensitive Information in continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

122. As a direct and proximate result of Defendants' breach of their fiduciary duty, Plaintiff and Class members have suffered, and will continue to suffer, other forms of injury and/or harm, and other economic and non–economic losses.

**Fifth Cause of Action**

**Breach of Confidence**

**(On Behalf of Plaintiff and the Class)**

123. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

124. At all times during Plaintiff's and Class members' interactions with Defendants, Defendants were fully aware of the confidential and sensitive nature of Plaintiff's and Class members' Sensitive Information that Plaintiff and Class members provided to Defendants.

125. As alleged herein and above, Defendants' relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class members' Sensitive Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

126. Plaintiff and Class members provided their respective Sensitive Information to Defendants with the explicit and implicit understandings that Defendants would protect and not permit the Sensitive Information to be disseminated to any unauthorized parties.

127. Plaintiff and Class members also provided their Sensitive Information to Defendants with the explicit and implicit understandings that Defendants would take precautions to protect that Sensitive Information from unauthorized disclosure, such as following basic principles of protecting their networks and data systems, including Defendants' patient/customer systems.

128. Defendants required and voluntarily received, in confidence, Plaintiff's and Class members' Sensitive Information with the understanding that the Sensitive Information would not be disclosed or disseminated to the public or any unauthorized third parties.

129. Due to Defendants' failure to prevent, detect, and avoid the Data Breach from occurring by, *inter alia*, following best information security practices to secure Plaintiff's and Class members' Sensitive Information, Plaintiff's and Class members' Sensitive Information was disclosed to, and misappropriated by, unauthorized third parties beyond Plaintiff's and Class members' confidence, and without their express permission.

130. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff and Class members have suffered, and will continue to suffer damages.

131. But for Defendants' disclosure of Plaintiff's and Class members' Sensitive Information in violation of the parties' understanding of confidence, Plaintiff's and Class members' Sensitive Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendants' Data Breach was the direct and legal cause of the theft of Plaintiff's and Class members' Sensitive Information, as well as the resulting damages.

132. The injury and harm Plaintiff and Class members suffered, and continue to suffer, was the reasonably foreseeable result of Defendants' unauthorized disclosure of Plaintiff's and Class members' Sensitive Information. Defendants knew their computer systems and technologies for accepting and securing Plaintiff's and Class members' Sensitive Information had numerous security and other vulnerabilities placing Plaintiff's and Class members' Sensitive Information in jeopardy.

133. As a direct and proximate result of Defendants' breaches of confidence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (a) potential identity theft; (b) the compromise, publication, and/or theft of their Sensitive Information; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (d) lost opportunity costs associated with effort expended

and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (e) the continued risk to their Sensitive Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession; (f) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class members; and (g) the diminished value of Defendants' services they received.

134. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non–economic losses.

**Sixth Cause of Action**

**Violation of the California Confidential Medical Information Act,**

**Cal. Civ. Code § 56, *et seq*.--CMIA**

**(On Behalf of Plaintiff and the Class)**

135. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

136. Under California Civil Code § 56.05, Defendants are each deemed a "provider of health care," "health care service plan," and/or "contractor" and is thus subject to CMIA, California Civil Code §§ 56.10(a), (d) (e), 56.36(b). 56.101 (a) and (b).

137. Under CMIA, California Civil Code § 56.05(m), Plaintiff and Class Members are deemed "patients."

138. Under CMIA, California Civil Code § 56.05(j), Defendants disclosed "medical information" to unauthorized persons without obtaining consent, in violation of 56.10(a). Defendants' misconduct, including failre to adequately detect, protect, and prevent unauthorized disclosure, directly resulted in the unauthorized access of Plaintiff's and Class Members' PI and PHI to unauthorized third parties.

139. Defendants' misconduct, including protecting and preserving the confidential integrity of their patients' PI and PHI, resulted in unauthorized disclosure of sensitive and confidential information that belongs to Plaintiff and Class Members to unauthorized third parties, breaching the confidentiality of that information, thereby violating California Civil Code §§ 56.06, 56.10 (a), and 56.101 (a).

140. As a result of the Data Breach, unauthorized third parties viewed Plaintiff's and Class Members' PI and PHI.

141. Plaintiff and Class Members have been, and continue to be, harmed as a direct, foreseeable, and proximate result of Defendants' breach because Plaintiff and Class Members are subject to an imminent threat of identity theft, fraud, embarrassment, and ransom demands, now and in the future. Plaintiff and Class Members must now spend time, effort, and money to actively monitor their accounds for such fraudulent activity, and monitor further disclosure of their PHI.

142. Plaintiff and Class Members were harmed and suffer damages, described through out this Class Action, due to Defendants' illegal disclosure and negligent release of their PI and PHI in violation of California Civil Code §§ 56.10 and 56.101. Plaitiff seeks relief under California Civil Code §§ 56.35 and 56.36, including actual damages, statutory damages, punitive damages, injunctive relief, and attorneys' fees and costs on behalf of himself and the putative class.

**<u>Seventh Cause of Action</u>**

**Violation of the California Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200, *et seq*.--Unfair Business Practices**

**(On Behalf of Plaintiff and the Class)**

143. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

144. Defendants violated Cal. Bus. & Prof. Code § 17200, *et seq*., by engaging in unlawful, unfair, or fraudulent business acts and practices, that constitute acts of "unfair competition" as defined in Cal. Bus. & Prof. Code § 17200.

145. Defendants engaged in unlawful and unfair acts and practices by establishing the sub–standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class members' Sensitive Information with knowledge the information would not be adequately protected; and by storing Plaintiff's and Class members' Sensitive Information in an unsecure electronic environment in violation of HIPAA and/or California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendants to take reasonable methods of safeguarding the Sensitive Information of Plaintiff and Class members.

146. In addition, Defendants engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and/or HIPPA.

147. As a direct and proximate result of Defendants' unlawful and unfair practices and acts, Plaintiff and Class members were injured and lost money or property, including but not limited to the loss of Plaintiff's and Class members' legally protected interest in the confidentiality and privacy of their Sensitive Information, nominal damages, and additional losses as described herein.

148. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Plaintiff's and Class members'

Sensitive Information and that the risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above–named unlawful practices and acts were negligent, knowing, and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class members.

149. Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiff and Class members of money or property Defendants may have acquired by means of Defendants' unlawful, and unfair business practices, restitutionary disgorgement of all monies that accrued to Defendants because of Defendants' unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## Eighth Cause of Action

### Violation of the California Consumer Privacy Act ("CCPA")

### Cal. Civ. Code § 1798.150, *et seq*.

150. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

151. Defendants are business organized and operated for profit or financial benefit of their owners with annual gross revenues of more than $25 million. Defendants collects consumers' PII as defined in Cal. Civ. Code § 1798.140.

152. Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiff's nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

153. Defendants have a duty to implement and maintain reasonable security procedures and practices to protect Plaintiff's PII. As detailed herein, Defendants failed to do so. As a direct and proximate result of Defendants' acts, Plaintiff's PII,

including social security numbers and names was subjected to unauthorized access and exfiltration, theft or disclosure.

154. Plaintiff seeks injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguard customers' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold current and past customers' PII including Plaintiff's PII. Plaintiff has an interest in ensuring that their PII is reasonably protected, and Defendants have demonstrated a pattern of failing to adequately safeguard this information.

///

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

1. That the Court certify this action as a Class Action under CCP § 382 and appoint Plaintiff as representative of the Class and his attorneys as Class Counsel;
2. Granting injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order:
   i. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein,
   ii. requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws,
   iii. requiring Defendants to delete, destroy, and purge the personal information of Plaintiff and Class members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy

interests of Plaintiff and Class members,

iv. requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal information of Plaintiff and Class members' personal information,

v. prohibiting Defendants from maintaining Plaintiff's and Class members' personal information on a cloud-based database,

vi. requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors,

vii. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring,

viii. requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures,

ix. requiring Defendants to conduct regular database scanning and securing checks,

x. requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal information, as well as protecting the personal information of Plaintiff and Class members,

xi. requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal

security personnel how to identify and contain a breach when it occurs and what to do in response to a breach,

xii. requiring Defendants to implement a system of tests to assess their employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal information,

xiii. requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated,

xiv. requiring Defendants to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal information to third parties, as well as the steps affected individuals must take to protect themselves,

xv. requiring Defendants to design, maintain, and test their computer systems to ensure that PII in their possession is adequately secured and protected,

xvi. requiring Defendants to disclose any future data disclosures in a timely and accurate manner; and

xvii. requiring Defendants to provide ongoing credit monitoring and identity theft repair services to Class members.

3. An award of compensatory, statutory, and nominal damages in an amount to be determined;
4. An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;
5. An award of reasonable attorneys' fees, costs, and litigation expenses, as

allowable by law; and

6. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable.

DATED: July 10, 2025

**SWIGART LAW GROUP, APC**

/s/ Joshua B. Swigart
Joshua B. Swigart
Attorneys for Plaintiff